IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

GALEN SUPPES )
          Plaintiff, )
  )
v. )
  )
KATTESH V. KATTI, in his )
individual and official capacity; and )
CHRISTOPHER M. FENDER, in his )
individual and official capacity )
          Defendants. )
  )

## COMPLAINT FOR DECLARATORY JUDGMENT AND PUNITIVE DAMAGES

Foremost, this is an action on the interpretation of federal law related to rights of ownership of one's own thoughts. More specifically, this is an action for a declaratory judgments (Counts I, II, and III) that Defendants have violated Tenth Amendment and Article One rights of Galen J. Suppes (hereafter Plaintiff) as well as other constitutional rights related to ownership of intellectual property. A declaratory judgment (Count IV) is asked of the Court to accept jurisdiction on a pending case in state court that is intricately dependent upon the constitutional issues raised by Counts I, II, and III of this Complaint. Finally, a declaratory judgment (Count V) is asked for punitive damages resulting from violation of the Plaintiff's constitutional rights.

## PARTIES

1. Plaintiff Suppes is a resident of the State of Missouri, currently residing at 4 Bingham, Columbia, Missouri 65203. Suppes is and has been since August, 2001, employed by the University of Missouri ("University") as a professor of Chemical Engineering.

Page **1** of **16**

2. Defendant Kattesh V. Katti is, and at all times relevant herein was, a Professor of Radiology and Physics at the University of Missouri ("University") and a member of the Patent Committee of the University of Missouri System (hereafter, UM System). In recent years Defendant Katti was chairman of the Patent Committee. He may be served at: 103 Alton Building Laboratories; 301 Business Loop 70 W; Columbia, Missouri 65212. The specification, duties, and authority of the Patent Committee is specified in the Collected Rules and Regulations of the UM System.

3. Defendant Christopher M Fender is, and at all times relevant herein was, Director of OTMIR, a resident of the State of Missouri, and an employee of the University with administrative duties affecting of handling inventions disclosed by Plaintiff Suppes' at the University of Missouri-Columbia. He may be served at: 425 McReynolds Hall, University of Missouri, Columbia, MO 65211.

4. Defendants Katti and Fender were employed by the Curators of the University of Missouri during the time period of the time of the events that give rise to this action.

## JURISDICTION AND VENUE

5. Original federal question jurisdiction of this Court is proper pursuant to Article III, Section 2 of the United States Constitution and 28 U.S.C. § 1331 which provides the federal courts shall have jurisdiction over federal questions. This Federal Court has subject matter jurisdiction over this action under and by virtue of the Court's jurisdiction of an individual's constitutional rights.

6. Declaratory Judgment Act 28 U.S.C. § 2201 provides the federal court the authority to make declaratory judgment on matters of federal jurisdiction.

7. This federal court has supplemental jurisdiction over counts pursuant to 28 U.S.C.

§ 1367 to the extent that a cause of action arises out of the same case or controversy.

8. As alleged more fully below, there is a substantial and actual controversy of sufficient immediacy between Plaintiff and Defendants as to Defendants unlawful pursuit of ownership of the thoughts of the Plaintiff.

9. This Court has personal jurisdiction over all defendants because they are residents of Missouri and can be served in this District and they were residents of Missouri at the time of the events that give rise to this action.

10. In all cases, venue is proper in this District because events giving rise to the cause occurred in this District.

11. This action is on an interpretation of federal law and constitutional rights to the extent that no normal contract can be used to take away those rights from the plaintiff; and so, this is not an action subject to contract law. State court has no jurisdiction since the Counts are on and related to constitutional rights that are not and cannot be nullified by any employment contract. The Counts and pleadings are presented without reference to, or dependence on, any contract.

## RELATED CONSTITUTIONAL RIGHTS AND CAUSE OF ACTION

12. Section 8 of Article 1 of the US Constitution delegates the U.S. Congress (hereafter Congress) with the authority to create Patent Law and Copyright Law.

13. The Tenth Amendment states: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

14. Instruments through which Congress exercises its Article 1, Section 8, Clause 8 (hereafter, Article 1) delegated authority are the Code of Federal Regulations and Acts of

Congress, both of which are under the highest levels of scrutiny during creation and under the highest levels of rigor during implementation.

15. Plaintiff has rights to cause of action from Section 1983 of the 1871 Civil Rights Act, against Defendants for violation of constitutional rights.

16. The actions and violations of the Curators are performed by individuals.

17. Defendants Katti and Fender are agents of the Curators and have performed actions and violations as specifically cited in this Complaint and have performed many of the actions and violations as attributed to the Curators in this Complaint.

18. Plaintiff has cause of action from the Fourteenth Amendment of the Constitution, which provides for due process of law prior to deprivation of property. The Fifth Amendment provides for just compensation.

## GENERAL ALLEGATIONS

19. Herein, the term "Inventive Thought" refers to intellectual property that either the Plaintiff or Curators refers to as an invention and wherein the said invention has neither a "patent pending" nor "patented" status.

20. CFR 35 U.S.C. § 261 provides a legal basis for assignment of patents or patent applications, but does not provide a legal basis for assignment of Inventive Thoughts.

21. No CFR identifies that assignment may be demanded of Inventive Thought.

22. CFR 35 U.S.C. Chapter 29 provides for remedies to infringement of a patent. These remedies provide a legitimacy and value of ownership of a patent.

23. No CFR or respective Chapter provides for remedies to infringement of Inventive Thought. The lack of legal remedies for infringement of Inventive Thought teaches away from the concept of an entity owning the Inventive Thought of another entity.

Page **4** of **16**

24. Article 1 delegates Congress the authority to identify how a person's intangible thought may be transformed to tangible and assignable property in the form of patented or copyrighted material(s); thus, the Tenth Amendment prohibits the Defendants from declaring a right of the Curators of the University of Missouri (hereafter "Curators") to do the same. More specifically, the Tenth Amendment prohibits the Defendants from enforcing self-declared regulations (as declared by either Defendants or Curators) on Inventive Thought.

25. Defendant(s) created multiple versions of Disclosure Form UM16C (hereafter IDF) including a current version that was approved by the Patent Committee.

26. The IDF requires the assignment of Inventive Thought.

27. Defendants demanded exclusive assignment of Plaintiff's Inventive Thought.

28. In a letter of November 8, 2008; Curators demanded assignment of 31 "Inventions Disclosed to the University of Missouri", independent of whether these inventions attained the state of patent pending or patented; this demand by the Curators was a demand for Inventive Thought.

29. Defendant(s) have demanded exclusive assignment from Plaintiff for "technologies" which Plaintiff has developed.

30. There is no CFR that provides for or regulates assignment of "technologies".

31. In a letter of November 8, 2008; Curators demanded assignment of five (5) "Other Technologies/Inventions", independent of whether these inventions attained the status of patent pending or patented and independent of any defining constraint on "Technologies". This demand by the Curators was a demand for Inventive Thought.

32. Defendant(s) demands for assignment were based on an assignment agreement which was unilaterally written by the Defendant(s) and is referred to as the University's Standard Assignment Form.

33. The assignment forms were written by Defendant(s) and were unconditional of further action by the Defendant(s) other than to pay a fraction of the royalties to the Plaintiff if the inventions were licensed, commercialized, and resulted in payment of royalties (plus payment of one dollar).

34. In exercising their constitution-based authority to create rules and regulations on the handling of inventions, the US Congress performed this duty with the following diligence (See 35 U.S.C. § 261 and Leahy–Smith America Invents Act [AIA]):

   a. Restricted the CFR to patents and patent applications,
   b. Created a legal definition for a patent,
   c. Created an independent federal office (USPTO) to oversee the handling of and designation of patents,
   d. Created a time limit on the duration of patents,
   e. Created an archive of patent and patent applications in a manner that provided for the advancement of science and engineering,
   f. Created and preserved a *quid pro quo* for inventors,
   g. Created a Patent Court for handling disputes related to patents where the court is independent of the disputing parties, and
   h. Followed through on international agreements to enforce inventor rights related to patents including a legally enforceable method to document

submission of patent applications and preserve the priority (filing) date for claiming by the inventor. This protects the invention from theft.

35. In Defendant's self-declared "authority" to create rules and regulations on the handling of inventions, the Defendant(s) empowered themselves as follows on a case-by-case comparison of a-i from of the #4 list of the US Congress. The Defendant(s):

  a. Claimed self-declared ownership of broad areas of Employee "inventions", "disclosures" and "technologies",

  b. Failed to create a legal definition of the term "invention",

  c. Vested essentially all decision-making authority on the handling of disclosed inventions with itself (specifically the MU System President),

  d. Failed to created any time limit for either Defendant(s) own actions or the Defendant(s) claimed ownership relative to disclosed inventions,

  e. Created no open access archive of inventions (i.e. buries the technology as opposed to publishing toward the purpose of advancing science and/or engineering),

  f. Failed to provide any meaningful *quid pro quo* for inventors if the Defendant(s) failed to license and commercialize the technology,

  g. Vested all aspects of challenging procedures in themselves (Defendant(s)) or a committee exclusively appointed by the Defendant(s),

  h. Have no authority (other than filing for patent) to preserve the priority date of the invention creating the opportunity for theft by those who have access to the disclosed inventions; whereby, the demands were unconditional of further action of the Defendant(s) other than payment of

a fraction of received royalties to the Plaintiff (plus payment of one dollar).

36. No Case Law exists where the Court interprets the US Constitution as allowing entities such as Curators to provide for regulations on handling of patents (including ownership of patents) where the regulations are unconditional of further action other than sharing royalties.

37. Case Law may exist where assignment of invention is substantiated by law if that assignment is conditional on the timely filing for and maintaining of patent (or patent application), but such a circumstance does not apply to Defendant(s)' demand for assignment.

38. Case Law may exist in which the court did not properly distinguish between patents and inventions.

39. In a series of actions including the following: a) Plaintiff disclosed an invention using the IDF, b) Defendant(s) refused to assign a disclosure number to the invention, c) Defendant(s) refused to file for patent on the invention, d) Defendant(s) failed to release the invention back to the Plaintiff, and e) Plaintiff paid for patent application(s); the Defendant(s) demanded exclusive assignment of the patent application without offer to reimburse Defendant for personally investments paid for patent application(s) and unconditional of further action of Defendant other than to pay the Plaintiff a fraction of the royalties received.

40. Defendant Christopher M. Fender (hereafter Defendant Fender) is the Director the Office of Technology Management & Industry Relations (hereafter, TMIR) at MU and has been in that position since at least May of 2011.

41. In Boone County Petition Case No. 09-BA-CV02314, Curators identified Defendant Fender as their expert for the deposition on the practices of TMIR and related handling of IDFs.

Page **8** of **16**

Case 2:16-cv-04235-MDH   Document 1   Filed 08/18/16   Page 8 of 16

42. Defendant Kattesh V. Katti (hereafter Defendant Katti) was a member of the Patent Committee when the latest version of the IDF was approved by the Patent Committee in 2013.

43. Defendant Katti was chairman of the Patent Committee: a) when Plaintiff Suppes asked the Patent Committee to remove the assignment language from the IDF in November 11, 2015 Patent Committee meeting and b) when Defendant Katti did not provide for agenda action to allow for the removal of the assignment language from the IDF.

44. The Curators through actions of its employees have demanded ownership/assignment of Inventive Thought from the Defendant.

45. The Curators through actions of its employees have demanded without offer of monetary reimbursement that Plaintiff Suppes assign to Curators patent applications paid for by Plaintiff Suppes.

46. In the letter of November 8, 2008; Curators threatened to "pursue claims in court" pursuant Plaintiff's submission to Curators' demands of assignment of Inventive Thoughts of Plaintiff.

47. In the year 2009, Curators filed petitions 09-4012-CV-C-SOW and 09BA-CV02314 against Plaintiff wherein paragraph 46 of 09BA-CV02314 states as part of Declaratory Judgment Count 2, "The University, based upon this language, is entitled to a declaration that such language constitutes an automatic assignment of all inventions developed by Suppes and Sutterlin since their employment by University began on August 1, 2001." This demand of the Curators is a demand for Inventive Thought.

48. The Curators' demands for assignment (ownership) of the Inventive Thought of the Plaintiff continues to and past the date of the filing of this Complaint in the form of

assignment language in the Curators' UM 16C disclosure form. That demand for assignment upon disclosure of invention is required without commitment of the Curators to file for patent; hence, Curators' UM 16C disclosure form requires assignment of Inventive Thought.

49. Through Complaint 09BA-CV02314, the Curators pursues litigation against Plaintiff, to date, in demand of assignment of Curators' Inventive Thought.

50. The Curators is able to file for patent on inventions submitted on UM 16C disclosure forms even if assignment language is not signed.

51. Assignment of Inventive Thought to the Curators is not required for Curators to file for patent, and so, the assignment of Inventive Thought by Plaintiff to Curators is not necessary for Curators to assert rights on inventions that Curators rightfully owns.

52. In the letter of October 29, 2015 from Curators's representative to Plaintiff, the representative states: "the University will not consider your request to file a PCT application without the receipt of an assignment"; hence the Curators's demand for the assignment of Inventive Thought from the Plaintiff continues to the date of the filing of this Petition.

53. The Curators, and representatives of the Curators, took actions that caused damages to the Plaintiff; these actions included threatening to abandon the patentability of Inventive Thought unless Plaintiff gave up rights otherwise provided for by contract as well as other threats and demands.

54. Defendants have provided no basis in law through which the Curators have right to ownership of the Plaintiff's Inventive Thought.

55. Signing an unaltered form of Defendants' UM16C Disclosure form includes assignment of Inventive Thought (i.e., those instances where a patent application has not already been made on the invention described in said UM16C Disclosure). Defendants stood to profit from claiming ownership to the Inventive Thought of Plaintiff as follows:

a. Curators ownership of Plaintiff's Inventive Thought increases the benefit-to-risk ratio of invention for the Curators; specifically, by not investing money and resources into a patent application, Curators reduce risk while the claiming of ownership preserves the prospect of benefit from the investment of others.

b. Individual Defendants gain from the same increase in benefit-to-risk ratio by not having to invest time and effort in patent applications or licensing while claiming any benefits as part of a success metric of their jobs potentially resulting in increased pay and benefits.

c. By claiming ownership of Inventive Thoughts of Plaintiff, the Defendants realize gain in the ability to influence the success of Plaintiff; more specifically, the Inventive Thoughts of an engineering professor can be one of the most powerful attributes toward professional and personal achievement; and by claiming ownership of those Inventive Thoughts, the Defendants are implicitly claiming the power to help or impede the professional success or reputation of Plaintiff.

56. As chairman of the Patent Committee, Defendant Katti presided over the Patent Committee including: a) controlling of the topics acted upon by the committee such as the topic of approving or modifying the UM 16C Disclosure form and b) making recommendations affecting the handling inventions disclosed by Plaintiff Suppes' at the University of Missouri-Columbia.

57. Defendant Fender formally asserted ownership of Inventive Thought of Plaintiff Suppes in a series of letters on October 28, 2015 and September 22, 2014. These letters were

followed by demands for assignment of the Inventive Thoughts of Plaintiff Suppes. The demands for assignment of the Inventive Thought of Plaintiff Suppes by Defendant Fender were directly and indirectly made by Defendant Fender on multiple occasions.

58. Defendants willing, knowingly, and purposely chose to make demands and take actions that cloud ownership rights to Plaintiff's Inventive Thoughts in violation of state law and federal law.

59. On multiple occasions, Defendants' actions that led to an increase in the benefit-to-risk ratio of the Defendants, also led to a reduction in the benefit-to-risk ratio of Plaintiff, specifically:

   a. Failure of Defendants to attain and maintain a "patent pending" status created the risk of losing priority on patent with associated risk of loss to perform research, to obtain research funding (with benefits of salary and professional gain), commercialize, and/or licensing revenues.

   b. Defendants' claiming of ownership increased the risk of Plaintiff not realizing the full benefits of ownership from personal money and resources Plaintiff invested toward patent projection or development of the invention.

   c. Defendants' claim of ownership increases the risk of potential investors who would invest in research, development, and commercialization; and so, Defendants' claims reduce Plaintiff's benefits from investment of third parties.

## COUNT I
### (Declaratory Judgment on Plaintiff's Tenth Amendment Rights)

60. Plaintiff incorporates by reference paragraphs 1 through 59 of this Petition as though fully restated herein.

61. In his action on the Patent Committee, Defendant Katti approved the UM16C

disclosure form which requires assignment of Inventive Thought.

62. In his actions as chairman of the Patent Committee, Defendant Katti did not place the removal of assignment language from the UM16C form on the Patent Committee meeting agendas of November 11, 2015 and May 9, 2016 even though Plaintiff Suppes informed Defendant Katti that the UM16C form which required assignment of Inventive Thought had no basis in law and violated the constitutional rights of Plaintiff Suppes.

63. To determine that Defendants Fender, and Katti actions of pursuing assignable ownership of Plaintiff's intellectual property is limited to types of property that are declared as assignable by Congress.

WHEREFORE, Plaintiff prays for judgment against Defendants Katti and Fender Curators as the Court deems just and proper.

## COUNT II
### (Declaratory Judgment that Defendants Violated the Constitution's First Article and Fourteenth Amendment Cause of Action wrt First Article)

64. Plaintiff incorporates by reference paragraphs 1 through 63 of this Petition as though fully restated herein.

65. The UM16C form does not provide something of value to the inventor for assigning Inventive Thought.

66. Rather than promoting the progress of science, the actions of the Defendant Fender stifled the progress of science by selectively enforcing punitive action against University inventors who are not submissive to the Defendants demands for assignment of Inventive Thought.

67. To determine that Defendants Fender and Katti violated Congress-specified *quid pro quo* requirements of Patent Law.

Page **13** of **16**

Case 2:16-cv-04235-MDH   Document 1   Filed 08/18/16   Page 13 of 16

68. To determine that self-ownership of one's thoughts is an unalienable right where only Congress has the right to identify how thought is transformed to an assignable property.

WHEREFORE, Plaintiff prays for judgment against Defendants as the Court deems just and proper.

## COUNT III
### (Declaratory Judgment Violating Fifth Amendment Rights and Fourteenth Amendment Cause of Action wrt the Fifth Amendment)

69. Plaintiff incorporates by reference paragraphs 1 through 68 of this Petition as though fully restated herein.

70. After a series of events comprising a) Defendants demanding assignment of Inventive Thought, b) Defendants refusing to act on UM16C disclosures because Inventive Thought was not assigned, and c) Plaintiff spending personal money to file for provisional applications for patent (and at times non-provisional patent applications); Defendants demanded assignment of said applications without providing just compensation to Plaintiff.

71. Defendants imposed punitive actions against Plaintiff for not submitting to Defendants' demands that Plaintiff give Defendants Inventive Thought of Plaintiff. Specifically, Defendants demanded patent applications without providing Plaintiff just compensation for Plaintiff's investment of personal moneys and resources into the patent applications. Punitive actions included, but were not limited to, the refusal to allow subcontracting of research funding to the University Laboratory as documented by the letter of December 17, 2015 from Interim Vice Chancellor McIntosh.

72. To determine that Plaintiff's Fifth and Fourteenth Amendment rights require Defendans Fender to provide Plaintiff just compensation for exclusive rights to property which Plaintiff personally funded.

WHEREFORE, Plaintiff prays for judgment against Defendants as the Court deems just and proper.

## COUNT IV
### (Declaratory Judgment on Allowing Federal Jurisdiction on Boone County Petition Case No. 09-BA-CV02314 and Case No. 15BA-CV03064)

73. Plaintiff incorporates by reference paragraphs 1 through 72 of this Petition as though fully restated herein.

74. The seriousness of the Counts of the Plaintiff's Boone County Petition Case No. 09-BA-CV02314 and Case No. 15BA-CV03064 are intricately related to the action of the defendants of that case pursuing ownership of Plaintiff's Inventive Thought.

75. To determine that United States District Court of the Western District of Missouri (Central Division) shall accept jurisdiction over the Counts Boone County Petition Case No. 09-BA-CV02314 and Case No. 15BA-CV03064 upon the filing of such a request by the Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendants for an amount which includes Plaintiff Suppes' actual costs, value of time spent on this action, and such other and further relief as the Court deems just and proper.

## COUNT V
### (Declaratory Judgment on Damages)

76. Plaintiff incorporates by reference paragraphs 1 through 95 of this Petition as though fully restated herein.

77. Actions of Defendants resulted in damages to Plaintiff in the form of reduced research contracts to Plaintiff's University laboratory, loss of summer salary from said research contracts, loss of opportunities to advance professional reputation, and the loss of opportunities to advance technology toward commercialization.

78. To determine that Defendants are to pay damages up to $7,500,000 which is based on research funding of $500,000 per year for fifteen years.

WHEREFORE, Plaintiff prays for judgment against Defendants for an amount which includes Plaintiff Suppes' actual costs, value of time spent on this action, and such other and further relief as the Court deems just and proper.

Respectfully Submitted,

*/s/Galen J. Suppes*
Galen J. Suppes, Plaintiff Pro Se
4 Bingham, Columbia, MO 65203; Telephone: 573-6738164